Loretta BURRELL, Linda L. Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan, Individually and on behalf of those similarly situated, Plaintiffs,

v.

CROWN CENTRAL PETROLEUM, INC., Defendant.

No. 1:97–CV–357.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 18, 1997.

---

Thomas Walter Umphrey, James Erick Payne, Provost & Umphrey, Beaumont, TX, Michael D. Hausfeld, Cyrus Mehri, Victoria C. Arthaud, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Reuben A. Guttman, Brian P. McCafferty, Provost & Umphrey, Washington, DC, for Loretta Burrell, Linda L. Brown, Catherine McAffee, John McDowell, Susan Robertson, Karen Sloan.

Thomas Walter Umphrey, James Erick Payne, Provost & Umphrey, Beaumont; TX, Michael D. Hausfeld, Victoria C. Arthaud, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Reuben A. Guttman, Brian P. McCafferty, Provost & Umphrey, Washington, DC, for Phyllis Miller.

James V. Carroll, III, Anne Gibson Bruckner, Fraser A. McAlpine, Littler Mendelson, Houston, TX, Mark E. Schwartz, Houston, TX, for Crown Central Petroleum Corp.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CROWN'S MOTION TO COMPEL*

SCHELL, Chief Judge.

Before the court is Defendant Crown Central Petroleum, Inc.'s ("Crown") Motion to Compel, filed on October 17, 1997. Plaintiffs filed a Response ("Response") on October 31, 1997. Crown filed a Reply to Plaintiff's Response ("Reply") on November 6, 1997. Plaintiffs filed a Surreply to Crown's Reply ("Plaintiffs' Surreply") on November 25, 1997. Finally, Crown filed a Response to Plaintiffs' Surreply ("Crown's Surreply Response") on November 26, 1997.

Upon consideration of the motion, the various responses and replies, and the applicable law, the court is of the opinion that Crown's Motion to Compel should be GRANTED IN PART AND DENIED IN PART.

### BACKGROUND

This is a putative class action filed by the plaintiffs on June 30, 1997. Plaintiffs claim that Crown discriminated against them on the grounds of race and sex. The facts of the case can be found in a previous opinion of the court signed on October 21, 1997. Regarding the instant motion, Crown filed a Motion to Compel asking the court to order plaintiffs to produce three categories of documents:

a) signed authorizations for plaintiffs' wage and earnings records;

b) signed authorizations for plaintiffs' medical records, if plaintiffs are seeking mental anguish damages; and

c) computations for each category of damages sought by each plaintiff, and the basis for each computation.

Crown's Mot. to Compel at 5.

It is Crown's position that all of the requested production should have been part of plaintiffs' initial disclosures under FED .R.CIV.P. 26(a)(1) and E.D.TEX. LOCAL R. CV–26(c).[1] Plaintiffs maintain that any

---

**1.** Crown actually relied on the Eastern District's Civil Justice Expense and Delay Reduction Plan, Art. II and its subdivisions. *See* Crown's Mot. To Compel at 3. The Plan has since been incorporat-

ed into the local rules, however, and the court will refer to such rules in their new manifestations. *See* E.D.TEX. GENERAL ORDER 97–12 (August 15, 1997).

items not yet disclosed to Crown are either not within the scope of the disclosures required by applicable law, or are unavailable to plaintiffs at this time. The items will be discussed in turn.

### A. Signed authorizations for plaintiffs' wage and earnings records

It has been represented to the court that these documents have been signed by the plaintiffs and have been delivered to Crown. Pls.' Response, Ex. A (indicating that the wage authorizations were enclosed with a letter sent on October 23, 1997); Crown's Reply at 2 n. 1 (indicating that the wage authorizations were delivered on October 23, 1997). Therefore, this issue is MOOT.

### B. Signed authorizations for plaintiffs' medical records, if plaintiffs are seeking mental anguish damages

Crown claims that it is allowed to evaluate the plaintiffs' medical histories since the plaintiffs claim damages for mental anguish.[2] Crown's Reply at 3. According to Crown, by claiming damages for mental anguish the plaintiffs have put their physical, and especially their mental, conditions at issue in the case. *Id., see also* Crown's Surreply Response at 3. In order to evaluate the case and the claims, therefore, they are entitled to the medical records of each plaintiff. Crown's Surreply Response at 3.

Plaintiffs argue that they have not placed their mental conditions at issue because they have sued under 42 U.S.C. § 1981 and under Title VII. Pls.' Surreply at 2. According to plaintiffs, if they had sued under state law tort claims such as intentional infliction of emotional distress, then their mental conditions would be at issue. Instead, under § 1981 and Title VII, the standard of proof for "mental anguish" is far less than what is required to prove a tort claim for an emotional injury, and their mental conditions are not at issue before the court. *Id.* at 5–6. According to plaintiffs, their claims center around the theory that a hostile work environment exists at Crown. *Id.* at 1. They

claim that "[i]n an employment discrimination action where the test for a hostile work environment is an objective one and where plaintiffs have not put their mental conditions at issue, defendants are not entitled to access to plaintiffs' medical records," as long as plaintiffs will not rely on them for the mental anguish damages. *Id.* at 1–2.

### 1. Recovery for Mental Anguish under § 1981 and Title VII

■ Emotional harm is recoverable under 42 U.S.C. § 1981. *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 937 (5th Cir. 1996). Additionally, "[t]he Civil Rights Act of 1991 expanded the remedies available to a Title VII claimant to include compensatory damages for mental anguish ..." *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 808 n. 6 (5th Cir.1996) (citations omitted). The Fifth Circuit uses the same standard for an award of mental anguish damages under Title VII as it does for an award of mental anguish damages under § 1981. *Id.* at 809 n. 8. For § 1981 and Title VII claims, if a reasonable person, under an objective standard, would be harmed by the alleged conduct, then the plaintiff "may receive compensation for emotional damages naturally flowing from that injury." *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 204, 211 (N.D.Tex.1996).

### 2. A physical or mental condition "in controversy" under Rule 35

There are numerous cases that examine the issue of whether an independent medical or psychological examination can be ordered for a plaintiff who claims mental anguish or some kind of emotional harm from a racial or sexual discrimination suit. Some courts have held that once emotional harm or mental anguish is claimed, then plaintiffs have placed their mental and physical conditions "in controversy." At that point, an independent medical examination can be ordered under Rule 35 if good cause is shown. *See Zabkowicz v. West Bend Co.,* 585 F.Supp. 635, 636 (E.D.Wis.1984) (sexual harassment

---

**2.** Crown only requests authorizations signed by the plaintiffs allowing Crown to access medical records; Crown does not ask that plaintiffs un-

dergo independent medical or psychiatric examinations. Crown's Reply at 4.

suit); *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298–99 (E.D.Pa.1983), (racial discrimination suit); *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543, 546 (S.D.N.Y.1978); *see also* FED.R.CIV.P. 35; *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (holding that the mental or physical condition has to be in controversy, and good cause must exist, before a Rule 35 examination can be ordered).

Other courts, meanwhile, have held that mental anguish claims in § 1981 and Title VII suits do not place the physical or mental condition of a plaintiff in controversy, so long as the mental anguish claims are ordinary, "garden-variety" claims that an objective fact finder can evaluate. *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 210 n. 2 (N.D.Tex.1996); *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y.1993) (where plaintiff in a § 1983 suit does not allege ongoing pain and suffering, only past emotional harm, allowing an independent medical examination would set bad precedent); *Sabree v. United Brotherhood of Carpenters & Joiners, Local No. 33*, 126 F.R.D. 422, 426 (D.Mass.1989) (in a race discrimination case claiming mental anguish, mental condition not in controversy); *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D.Mass.1984). These courts hold that mental anguish damages in a § 1981 case or a Title VII case are equivalent to the damages for mental anguish or pain and suffering that are awarded in normal personal injury suits. *Lahr*, 164 F.R.D. at 210.

Under the reasoning of these latter cases, in a personal injury suit the physical injury is the crux of the case. The mental anguish and the pain and suffering are incident to the physical injuries, and the presence of those elements of damage do not put a plaintiff's mental condition in controversy. *Lahr*, 164 F.R.D. at 210 (citing *Coates v. Whittington*, 758 S.W.2d 749 (Tex.1988)). Similarly, in § 1981 cases and Title VII cases, the crux of the case is the work-related income loss resulting from discrimination. Mental anguish is incident to the work-related economic damages like lost wages. Asking for mental anguish damages does not place a plaintiff's physical or mental condition "in controversy," and it will not justify a medical or psychological examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (holding that the mental or physical condition has to be in controversy before a Rule 35 examination can be ordered).

### 3. The difference between a plaintiff's condition being "in controversy" under Rule 35 and being "relevant" under Rule 26

■ In the present case, however, the dispute is not about independent medical examinations. Crown only wants access to plaintiffs' medical records. Crown's Reply at 4. Just because the test for Rule 35 is not met does not mean that the medical records are unavailable. *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 222 (S.D.N.Y.1994).[3] Rule 26 allows discovery of all relevant documents that may lead to admissible evidence. *Id.* at 223. This might include medical records. Even if the plaintiffs' mental conditions are not in controversy, the records can be relevant if they shed light on other contributing causes to plaintiffs' mental anguish. Crown's Reply at 3 ("Crown is entitled to discover causes of any alleged anguish not attributable to Crown.").

In *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216 (S.D.N.Y.1994), the court held that medical records in a § 1981/Title VII case are fully discoverable when a plaintiff in such a suit claims damages for mental anguish. The court held that a mere claim for mental anguish in a racial or sexual discrimination suit was not necessarily enough to meet the two-step burden imposed by Rule 35. *Id.* at 221. Therefore, an independent medical examination was not appropriate. But since the plaintiffs were claiming mental anguish damages, any past psychological ex-

---

**3.** The parties do not dispute that if the plaintiffs have put their physical or mental conditions in controversy, then they will have to disclose the plaintiffs' medical records or a signed authorization that would allow certain records to be disclosed to Crown's counsel. *See* E.D.TEX. LOCAL RULE CV–26(c)(I)(F)(i) (requiring records or authorizations if the plaintiff's medical or physical condition is "at issue.").

periences and/or emotional harm were relevant. Therefore, the court ordered plaintiffs to turn over their medical records, despite the possible invasion of privacy. *Id.* at 223; *see also Ferrell v. Brick,* 678 F.Supp. 111, 113 (E.D.Pa.1987) (allowing discovery of psychiatric records).

While the question presented before the *Bridges* and *Ferrell* courts was the same facing this court presently—whether the medical records are discoverable under Rule 26—neither of the courts passed directly on whether a plaintiff's mental condition is "in controversy" when the plaintiff claims mental anguish or emotional harm. Instead, they concentrated on the relevancy of medical and psychological records to the plaintiff's mental condition. *Bridges,* 850 F.Supp. at 223; *Ferrell,* 678 F.Supp. at 113. Whether the mental or physical condition of the plaintiff is "in controversy" is a requirement for Rule 35, not Rule 26. *See Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964). The test for Rule 26 is whether the information requested is relevant. *See Bridges,* 850 F.Supp. at 223 (holding that the records are available if " 'there is any possibility that the information sought may be relevant' to the litigation") (citations omitted).

If a plaintiff's physical or mental condition is in controversy, it is by definition relevant. Conversely, when the physical or mental condition of a plaintiff is not in controversy, it may still be relevant. The *Bridges* and *Ferrell* courts determined that the medical records of plaintiffs in § 1981 and Title VII cases were relevant, even if not in controversy. The court will now examine Fifth Circuit case law to determine if the law in our circuit is the same as that propounded by the sister courts in New York and Pennsylvania, respectively. The first issue is whether the plaintiffs' physical or mental conditions are, in fact, in controversy. If they are not in

controversy, the second issue is whether the conditions are still relevant such that the plaintiffs' medical records will be discoverable.

*4. Is a Plaintiff's physical or mental condition "in controversy" in § 1981 and Title VII cases in the Fifth Circuit, when a plaintiff claims damages for mental anguish?*

Recently, two Fifth Circuit cases have been decided that shed some light on this issue. They do not give specific instructions to a district court on which evidence is or is not subject to disclosure, or even what evidence may or may not be relevant. Instead, they discuss the level of proof needed to recover mental anguish damages in Title VII and § 1981 cases. Nevertheless, the cases are informative and, the court believes, dispositive of the issue before it.

In *Patterson v. P.H.P Healthcare,* 90 F.3d 927 (5th Cir.1996), two health care professionals sued their employer, a health care provider. One plaintiff, a black male, sued under § 1981 for racial discrimination and constructive discharge. *Id.* at 930. The second plaintiff, a white female, sued for retaliatory discharge under Title VII.[4] *Id.* The jury awarded mental anguish/emotional harm damages to both plaintiffs.[5] *Id.* at 932–33. The defendant appealed the sufficiency of the evidence supporting the awards for emotional harm. The Fifth Circuit reversed the awards for emotional harm and held that under § 1981 and Title VII, claims for emotional damage and mental anguish had to be supported by corroborating evidence. *Id.* at 940–41. Thus, the Fifth Circuit remanded the case with instructions to the district court to enter an award for nominal damages only. *Id.*

 Under § 1981, claimants can recover compensatory damages for mental anguish

---

**4.** She alleged she was fired for her opposition to the discrimination that had been leveled against the black male plaintiff. *Patterson,* 90 F.3d at 930.

**5.** The Fifth Circuit treated mental anguish, emotional harm, emotional distress, and mental pain and suffering under the catch-all heading of "Emotional Harm." *Patterson,* 90 F.3d at 937,

940. The court, therefore, will consider the terms "mental anguish" and "emotional harm" to be synonymous and interchangeable for the purposes of this opinion. *See, e.g., id.* at 940 ("As such, both § 1981 and Title VII permit awards for intangible loss such as mental anguish or emotional distress.").

caused by a constitutional injury only when the plaintiff submits proof of actual injury. *Patterson v. P.H.P Healthcare,* 90 F.3d at 938 (citing *Carey v. Piphus,* 435 U.S. 247, 255–56, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978)). The Fifth Circuit has extended this rule to Title VII cases as well. *Id.* at 940 (treating § 1981 claims and Title VII claims identically on the issue of mental anguish). Thus, the rule is that an award for mental anguish or emotional harm in a case brought under § 1981 or Title VII "must be supported by competent evidence concerning the injury." *Id.* at 941 (citing *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 1052 n. 20, 55 L.Ed.2d 252 (1978)). "Emotional harm will not be presumed simply because the complaining party is a victim of discrimination. The existence, nature, and severity of emotional harm must be proved." *Id.* at 939 (quoting EEOC Policy Guidance NO. 915.002, § II(A)(2) at 10–12) (emphasis omitted). Testimony from a plaintiff can help support an award for emotional harm, but unless it is corroborated, nothing more than nominal damages will be allowed for mental anguish. *Id.* at 938; *see also id.* at 940, 941 (reversing awards for mental anguish because they were based solely on each claimant's uncorroborated testimony, and instructing the district court to enter an award for nominal damages only).

What was left undecided, however, was the nature and quality of the corroborating evidence necessary to support an award for emotional harm or mental anguish. Some language in the *Patterson* opinion seems to prefer both lay testimony and medical testimony to corroborate the plaintiff's testimony: "In many instances, corroborating testimony *and* medical evidence of medical or psychological treatment have been relied upon to support an award of emotional harm or mental anguish." *Patterson,* 90 F.3d at 938 (emphasis added); *see also id.* at 939 ("No evidence suggests that [plaintiff] suffered from sleeplessness, anxiety or depression"); *id.* at 938 (citing numerous cases where an award of emotional damages was upheld because corroborated by psychological and medical evidence).

However, the Fifth Circuit was also careful not to *require* medical and/or psychological testimony. For example, consider the following sentences:

a) "[Plaintiff] presented no corroborating testimony nor did he offer expert medical or psychological evidence of damages caused by his alleged distress." *Id.* at 939.

b) "In order to establish intangible loss, we recognize that *Carey* requires a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Id.* at 940.

The Fifth Circuit's use of the disjunctive "nor" in the first sentence, and the combination of "may" and "or" in the second, clearly suggests that emotional harm can be established in a § 1981 or Title VII claim with something less than medical or psychological evidence. The appellate court did not use the conjunctive "and" or the imperative "must" that would signify medical or psychological evidence was necessary. The wording suggests that *either* lay testimony or medical evidence corroborating a plaintiff's claim can support an award for emotional distress.

In a subsequent case even closer to the present facts, *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803 (5th Cir.1996), a female former employee brought suit under Title VII against her former employer for a hostile working environment. Simultaneously, she brought a claim under Texas state law for intentional infliction of emotional distress. *Id.* at 805. At trial, Farpella–Crosby brought no medical or psychological evidence. Like the plaintiffs in *Patterson,* she testified on her own behalf. *Id.* at 809. The jury awarded the plaintiff $7,500.00 in compensatory damages for mental anguish. *Id.* at 808. On appeal, the defendant challenged the sufficiency of the evidence supporting the award. *Id.* Unlike in *Patterson,* however, the Fifth Circuit upheld the mental anguish damages.

The *Farpella–Crosby* court acknowledged that "psychological injury is not a prerequisite to bringing a Title VII hostile work environment claim." *Id.* (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20–24, 114 S.Ct. 367, 369–72, 126 L.Ed.2d 295

(1993)). If mental anguish or emotional harm damages are claimed, however, then a certain amount of proof is required. *Farpella–Crosby,* 97 F.3d at 808 (citing *Patterson, supra* ). "[T]o recover mental anguish damages, the claimant must satisfy the specificity requirement set out in [*Carey v. Piphus* and *Patterson.*]" *Id.* The court stated that Farpella–Crosby's own testimony went directly to the hostile working environment claim. "Farpella–Crosby presented both evidence that she was subjected to a hostile work environment and evidence from which the jury could have inferred that she experienced stress and humiliation as a result of [defendant's conduct.]" *Id.* at 809. Second, Farpella–Crosby offered corroborating testimony from a co-worker, who testified to the nature of the stress and humiliation engendered by the hostile working environment. *Id.*

In applying the *Carey Patterson* standard, the court held that Farpella–Crosby offered enough evidence to support a hostile working environment claim. *Id.* The court did not state whether her testimony alone would have been sufficient or whether the corroboration was necessary, but the court was clearly impressed with the specific nature of the evidence and the manner in which it reflected the claim of a hostile working environment. *Id.* (stating that the plaintiffs in *Patterson* presented no evidence of humiliation or a hostile working environment, and that the *Patterson* testimony was not sufficient to recover mental anguish damages because it did not satisfy the EEOC guidelines from which the Fifth Circuit developed its standards).

What is clear from *Farpella–Crosby* is that although corroboration may be needed in order to meet the *Carey/Patterson* standard, the corroboration does not have to be medical testimony. The plaintiff in *Farpella–Crosby* did not offer medical testimony, and her claim for mental anguish was upheld. The court found that mental anguish or emotional harm damages can be inferred by the fact finder. *Farpella–Crosby,* 97 F.3d at 809 (holding that the jury could infer that the plaintiff experienced stress and humiliation as a result of the hostile working environment.)

■ Since the Fifth Circuit does not require medical testimony or medical records to support a claim for mental anguish in Title VII or § 1981 cases, it is clear that the Fifth Circuit interprets § 1981 and Title VII such that a claim for mental anguish or emotional harm under those theories does not necessarily put the plaintiffs' mental condition in controversy. Absent some greater showing that the physical or mental conditions of the plaintiffs have been placed in controversy, the court will assume the mental anguish claims in this case are the "garden-variety" that are incident to job-related discrimination. *See Lahr, Sabree, supra.*

### 5. The relevance of the physical or mental condition of a plaintiff in a § 1981 or Title VII claim in the Fifth Circuit

■ As stated above, however, even if the plaintiffs' physical or mental conditions are not "in controversy," the medical records can still be relevant under Rule 26. *Bridges,* 850 F.Supp. at 223. Medical and psychological records often reflect a person's state of mind, the manner in which they perceive a course of events, and external circumstances which may be contributing to the harms complained of in a lawsuit. Nevertheless, the court is also aware of the tremendous potential for abuse that exists when a defendant has unfettered access to a plaintiff's medical records. While that potential for abuse is present in hundreds of thousands of cases everyday, that potential is even greater where, as here, the plaintiffs' physical or mental conditions have not been placed in controversy.

Crown agrees that *Patterson* holds that without corroboration of mental anguish testimony, a plaintiff is entitled solely to nominal damages. Crown's Surreply Response at 3. Crown also agrees that the corroborating evidence may take the form of medical or psychological evidence. *Id.* Crown argues:

If Plaintiffs intend to seek only nominal damages for emotional harm, then Crown has no need for Plaintiffs [*sic* ] medical records. However, if Plaintiffs intend to seek more than nominal damages for any alleged emotional distress, then Plaintiffs are placing their mental condition at issue

in this case, and Crown is entitled to explore any evidence, including the Plaintiffs' medical records, which may be relevant to such a claim.

*Id.*

The above argument presents inferences with which the court does not agree. First, the physical or mental condition of a § 1981 or Title VII plaintiff is not at issue or in controversy simply because mental anguish damages are claimed. *See* Section B(4), *supra.* Second, the nature of mental anguish damages in § 1981 and Title VII claims are the same as mental anguish damages in personal injury suits. *See* Section B(3), *supra.*

Without showing that the mental condition of a plaintiff is somehow at the crux of the case, records reflecting the mental condition are not relevant so as to fall under mandatory disclosure of Rule 26(a)(1)(B). *Patterson* and *Farpella–Crosby* allow recovery for emotional harm based on corroborating evidence that may include, *but does not have to include,* medical records or testimony. If plaintiffs are not going to use medical records or medical testimony at trial in order to prove up the claims for mental anguish, then the court sees no reason why the records must be disclosed. *See Farpella–Crosby,* 97 F.3d at 809. Accordingly, the court declines to follow the reasoning of *Bridges v. Eastman Kodak,* 850 F.Supp. 216, 223 (S.D.N.Y. 1994), and *Ferrell v. Brick,* 678 F.Supp. 111, 113 (E.D.Pa.1987).

The plaintiffs have represented to the court that they will not be presenting medical evidence and will not be relying on medical records to pursue or prove their claim. Accepting that as true, the court does not believe the relevance of the plaintiff's medical records justifies voluminous disclosure by the plaintiffs for records not required to be a part of their case.[6] The court is convinced that, under these facts and circumstances, disclosure of the medical records does not fall under the mandatory disclosure provisions of Rule 26(a)(1)(B) or the initial disclosure provisions of Local Rule CV–26(c)(1)(F)(i). Accordingly, Crown's motion to compel signed medical and psychological authorizations is hereby DENIED.

### C. Computations for each category of damages sought by each Plaintiff, and the basis for each computation

#### 1. Computations for work-related compensatory damages: lost wages and future wages

■ Crown argues that the Local Rules of the Eastern District require the parties to disclose "computations" of damages, not just categories of damages. E.D.Tex. Local R. CV–26(c)(1)(C).[7] Crown also cites another local rule, subtitled "No Excuses," that requires initial disclosure of all relevant, non-privileged information regardless of the length of time the case has been pending or the breadth of information held by the party. *Id.* at CV–26(c)(4).[8]

Plaintiffs respond that Fed.R.Civ.P. 26(a)(1) requires only that "[a] party shall make its initial disclosures based on the information then reasonably available to it." Pl.'s Resp. at 3 (citing FED.R.CIV.P. 26(a)(1)). Plaintiffs contend that they have satisfied their disclosure burden by disclosing everything they could regarding damages with the information currently available to them. *Id.* Plaintiffs argue that without certain relevant employment data from Crown's human resources databases and affirmative action

---

**6.** Needless to say, if the plaintiffs change their minds and wish to present medical testimony at trial, they need to supplement their disclosures as soon as possible. Should such a supplement occur, in the interests of justice the court will consider a motion to strike such testimony, if Crown feels it was ambushed by late disclosure.

**7.** Crown actually relies on the CJRA plan of the Eastern District, which has since been incorporated into the Local Rules. *See supra* note 1. This does not affect the merits of Crown's arguments, however, as the provisions from the CJRA

plan were incorporated into the local rules, not deleted from them.

**8.** Originally found in the CJRA Plan at Art. II(1)(d), the text of the rule reads in relevant part: "(4) No Excuses. A party is not excused from disclosure because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures ..."

plans, they are unable to give Crown reasonable calculations. According to plaintiffs:

> Crown has not produced to plaintiffs other documents needed to calculate lost wages and future wages, such as: documents which compare the salaries of the non-hourly putative class members to other non-hourly workers who are not within a protected class; databases maintained by Crown, in computer readable form; plans or policies relating to analyzing employment opportunities for African–Americans and women; and documents concerning any system, policy, or practice that Crown has or uses to determine any non-salaried compensation of salaried employees.

*Id.* According to plaintiffs, without these documents, they cannot provide Crown with a meaningful computation of lost wages and/or future wages. *Id.*

After a case management conference held on November 6, 1997, the parties conferred and reached agreement on certain disclosure issues. They notified the court of their agreement by a joint letter submitted by counsel for both sides, signed on November 18, 1997. One issue that was resolved was that Crown would deliver its Affirmative Action plans and Human Resources databases to the plaintiffs, in the form and scope delineated by the court during the case management conference, by December 5, 1997.

Therefore, plaintiffs have been provided with the documents without which they claimed they could not make the computations. Now that they have received the documents and databases, they should be in a better position to provide Crown with a reasonable computation of the damages claimed in this action.

Crown also insists that plaintiffs provide a computation for each of the class representatives. Plaintiffs object to that request because, as a putative class action, plaintiffs feel that merely listing the damages for each individual representative distorts the lawsuit and "confuses the issue." Pls.' Response at 4–5. In truth, the court is somewhat perplexed by this subplot in the disclosure dispute. Crown has moved to compel plaintiffs to disclose the damages for the eight named plaintiffs. Crown certainly has a right to request this disclosure under FED.R.CIV.P. 26. Nothing prevents plaintiffs from estimating damages to the putative class or subclasses, in addition to the eight named plaintiffs, based on the information available to them. In fact, plaintiffs have a duty under Rule 26 to disclose computations of any category of damages claimed. This duty would include damages to the eight named plaintiffs and to the putative class and subclasses. As more information becomes available that would be relevant to the putative class or subclasses, plaintiffs can supplement their disclosures to include the incorporation of that new information. The court knows of no case where a party complained of receiving too much disclosure.

In this case, the class has not yet been certified. Therefore, it is difficult to know where the line must be drawn between generalized allegations of the plaintiffs, and the defendant's desire to explore the individual plaintiffs' claims to determine the viability of their allegations. If plaintiffs have allegations concerning a large number of people, they should compute the potential damages accordingly. If Crown wishes to view the eight named plaintiffs in eight personal vacuums, plaintiffs can quantify the damages to the eight as individuals and as members of the class.

If for some reason the plaintiffs have insufficient information upon which to base a computation, and after conference and consultation with defendant Crown they cannot reach a compromise or conclusive solution, they can notify the court of that fact. The defendant may not withhold information material to plaintiff's proof of their case, and there is no indication that Crown has attempted to do so here. *Cf. Buycks–Roberson v. Citibank Federal Sav. Bank,* 162 F.R.D. 338, 341 (N.D.Ill. 1995) (in a class action based on redlining, defendant must disclose information relevant to plaintiffs' claims). Thus far the parties have exhibited a willingness to cooperate with one another so as to increase the efficiency with which the litigation is conducted, and the court trusts that this trend will continue.

Therefore, Crown's motion to compel is GRANTED as to the issue of work-related damages. Plaintiffs are hereby ORDERED to supplement their disclosures to the best of their ability by January 30, 1998. Plaintiffs must provide Crown, based on the information currently available to them, with a computation of any category of damages claimed by the plaintiffs, both current and potential, as members of a putative class or subclasses. Plaintiffs must also provide Crown with a computation of damages, based on the information currently available to them, for each of the named individual plaintiffs. As the case progresses, plaintiffs must supplement their computations and categories of damages based on newly-revealed information.

### 2. Computations for Compensatory Damages that are not work-related

■■■ Regarding compensatory damages that are not work-related, plaintiffs claim a computation is unnecessary under Rule 26(a)(1)(C) since the trier of fact must determine compensatory damages for mental anguish. Pls.' Resp. at 4. In light of the court's ruling on the issue of mental anguish, the court agrees that such damages will be determined by the trier of fact insofar as they relate to mental anguish or emotional harm. *See* Section B(4) and B(5), *supra*. Any further compensatory damages not related to the issue of mental anguish must be reasonably calculated and disclosed to Crown, however.

Accordingly, Crown's motion to compel is DENIED insofar as Crown has requested plaintiffs to submit a computation of the compensatory damages attributable to mental anguish. Crown's motion to compel is GRANTED, however, as to any category of non-work related compensatory damages that do not fall under the category of mental anguish, if any such damages exist.

### 3. Computations for Punitive Damages

■■■ To recover punitive damages under § 1981 or Title VII, the plaintiffs will have to show at trial that the defendant acted with malice or with reckless indifference. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 941–42 (5th Cir.1996) (reviewing authorities, and consolidating the standard for analyzing punitive damages under both § 1981 and Title VII). To recover punitive damages against Crown as an employer, the plaintiffs will have to show that the company itself engaged in discriminatory conduct reaching the level of maliciousness or discriminatory conduct, or at least that the company knew about such conduct and authorized, ratified, or approved it. *Id.* at 944.

The disclosure rules of Rule 26 were instituted in part "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." 1993 Advisory Committee Notes, FED.R.CIV.P. 26. Moreover, the court may issue an order modifying disclosure under Rule 26 to "eliminate or modify the disclosure requirements in a particular case ... The disclosure obligations specified in [Rule 26(a)(1) ] will not be appropriate for all cases, and it is expected that changes in these obligations will be made by the court or the parties when the circumstances warrant." *Id.*

The zeal with which counsel for both sides have approached the discovery issues in this case is to be commended. At this time, however, discovery on the issue of punitive damages is premature and goes beyond the basic information anticipated by the disclosure system.[9]

Punitive damages, if merited, are to be determined by the fact finder and are up to the discretion of the trier of fact. *Patterson*, 90 F.3d at 943 (citing *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994)). In this case,

---

9. For example, if punitive damages are available, discovery as to the defendant's net worth, among other things, is appropriate and relevant. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 n. 5 (5th Cir.1997); *see also* 1993 Advisory Committee Notes, Rule 26 (plaintiffs' obligation of disclosure does not apply to documents not within their possession). The court does not want defendant to have to disclose detailed and possibly confidential information for an issue that may not arise. At the same time, the court will not order plaintiffs to make calculations with numbers other than that which they would normally use.

class certification has not yet been decided and discovery is only now beginning. The issue of liability is still being investigated; therefore, the question of liability for punitive damages seems premature. Until such time as the issue of punitive damages is more clearly defined, the court will withhold discovery on this issue. Crown's motion to compel a computation of punitive damages is DENIED.

CONCLUSION

For the reasons stated above, Crown's Motion to Compel is hereby GRANTED IN PART and DENIED IN PART.

Crown's motion is GRANTED insofar as Crown is entitled to receive computations for each category of work-related compensatory damages sought by the putative class and subclasses and by each of the eight named plaintiffs, and the basis for each computation, as soon as such computations are available from plaintiffs' expert. The computation is to be disclosed to Crown no later than January 30, 1998, although plaintiffs have the right to petition the court for good cause if an extended period of time is needed. Crown's motion is also GRANTED as to any non-work related compensatory damages that are not related to mental anguish or emotional harm.

Crown's motion is hereby DENIED in that Crown is not entitled to compel plaintiffs to disclose signed medical authorizations. Crown's motion is also DENIED insofar as plaintiffs do not have to disclose a computation for compensatory damages for mental anguish or emotional harm. Finally, Crown's motion is DENIED in that plaintiffs do not have to disclose a computation of estimated punitive damages until such time as discovery upon that issue indicates to the court and the parties that punitive damages are in controversy, and that enough information is available so that plaintiffs may make a reasonable calculation. It is so ORDERED.