### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

v.

**WAL–MART STORES, INC., Defendant.**

**No. CV–10–338–RMP.**

United States District Court, E.D. Washington.

Sept. 21, 2011.

638

William R. Tamayo, Equal Employment Opportunity Commission, San Francisco, CA, John F. Stanley, Teri L. Healy, Equal Employment Opportunity Commission, Sea Seattle District Office, Seattle, WA, for Plaintiff.

Laura P. Jordan, Richard Renato Menghello, Fisher & Phillips LLP, Portland, OR, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO COMPEL

ROSANNA MALOUF PETERSON, Chief Judge.

This matter comes before the Court on a motion to compel discovery, ECF No. 23, by Defendant Wal–Mart Stores, Inc. ("Wal–Mart"). A telephonic motion hearing was held on September 15, 2011. Richard Menghello appeared on behalf of Wal–Mart. Teri Healy and John Stanley appeared on behalf of Plaintiff United States Equal Employment Opportunity Commission ("EEOC").

This case concerns whether Wal–Mart accommodated the religious beliefs of a Wal–Mart management employee, Richard Nichols, who asserts that he is a devout Mormon who considers work to be forbidden on Sundays. Plaintiff filed a First Amended Complaint on June 28, 2011. ECF No. 21. The

amended complaint alleges employment practices in violation of the Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1), and seeks a permanent injunction, an order requiring Defendant to "institute and carry out policies, practices, and program which provide equal employment opportunities for all employees, and which eradicate the effects of past and present unlawful employment practices," and damages for "past and future nonpecuniary losses," including pain, suffering, and loss of enjoyment of life. ECF No. 21 at 5.

The motion to compel presents three separate issues, which the Court addresses in turn.

### Computation of Emotional Distress and Punitive Damages

Defendant argues that it is insufficient for Plaintiff to simply disclose that it will seek the statutory maximum for noneconomic and punitive damages, which is $300,000 for an employer of Wal–Mart's size.

According to Fed.R.Civ.P. 26(a)(1)(A)(iii), a party must, without awaiting a discovery request, provide to the other party:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; . . .

The case emphasized by Defendant, *Sharma v. Vancouver*, 2007 WL 4376177 (W.D.Wash. Dec. 13, 2007), does not cite any authority apart from Fed.R.Civ.P. 26 for its decision to compel the plaintiff in that case to supplement or correct his computation of emotional injuries and punitive damages. However, district courts have frequently denied motions to compel computations of emotional distress and punitive damages because they are "difficult to quantify" and are "typically considered a fact issue for the jury." *See Anderson v. United Parcel Service,* 2010 WL 4822564, *10, note (D.Kan. Nov. 22, 2010), compiling the following cases: *Williams v. Trader Publ'g, Co.,* 218 F.3d 481,

486 n. 3 (5th Cir.2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)."); *Creswell v. HCAL Corp.,* No. 04cv388 BTM (RBB), 2007 WL 628036, at *2 (S.D.Cal. Feb. 12, 2007) ("While Rule 26 generally requires a party to provide a computation of such damages, emotional damages, because of their vague and unspecific nature, are oftentimes not readily amenable to computation."); *Gray v. Florida Dep't of Juvenile Justice,* No. 3:06–cv–990–J20MCR, 2007 WL 295514, at *2 (M.D.Fla. Jan. 30, 2007) ("[C]ompensatory damages for emotional distress may not be susceptible to computation and thus, it is within the jurors' ability to determine a reasonable amount. As such, Plaintiff is not required to provide Defendant with a calculation of her suggested compensatory damages for emotional distress pursuant to Rule 26(a)(1)(C).") (internal citation omitted); *see also Burrell v. Crown Centr. Petroleum, Inc.,* 177 F.R.D. 376, 386 (E.D.Tex.1997) (denying motion to compel requesting plaintiffs to submit computation of compensatory damages attributable to mental anguish where plaintiffs argued trier of fact must determine proper amount of damages for mental anguish); *see also First v. Kia of El Cajon,* 2010 WL 3069215 (S.D.Cal.2010); *E.E.O.C. v. General Motors Corp.,* 2009 WL 910812, *3, note 1 (S.D.Miss. Apr. 1, 2009) (finding that a claim for punitive damages is an issue for the jury and not amenable to a specific calculation under Rule 26 and, therefore, that the EEOC is not barred from seeking such damages based on its failure to provide a specific computation in its disclosures).

█ The Court denies the Defendant's motion to compel a computation of Plaintiff's emotional distress and punitive damages on the basis that they are issues for the factfinder. However, if Plaintiff intends to suggest a specific amount to the jury for emotional distress damages, yet fails to supplement its Rule 26 disclosures to provide Defendant with a computation of damages, Plaintiff may be foreclosed from suggesting that specific amount for emotional distress damages to

the jury at trial. *See, e.g., Sandoval v. American Bldg. Maint. Indus., Inc.,* 267 F.R.D. 257, 282 (D.Minn.2007); *E.E.O.C. v. General Motors Corp.,* 2009 WL 910812, *3 (S.D.Miss. Apr. 1, 2009).

### Mr. Nichols' Medical Records

Defendant seeks documentation regarding Mr. Nichols' medical conditions and health care providers from the past five years. ECF No. 30 at 5. In Plaintiff's initial disclosures, Plaintiff indicated that it will seek emotional distress damages "to the extent fully allowable under the law," which for an employer of Wal–Mart's size is $300,000. ECF No. 28–2 at 4. Defendant argues that this description of the damages Plaintiff seeks for emotional distress damages belies that they are "garden variety."

Plaintiff responds that it does not intend to introduce medical records or expert testimony to support the emotional distress claims. *See Passantino v. Johnson & Johnson Consumer Prod.,* 212 F.3d 493, 513 (9th Cir.2000) (emotional damages awards need not be supported by medical records or expert testimony).

Federal Rule of Civil Procedure 26(b)(1) articulates the appropriate scope of discovery and generally permits liberal discovery of relevant information. *See* Fed.R.Civ.P. 26(b)(1); *Seattle Times, Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Discovery requests are permissible under Fed.R.Civ.P. 26(b)(1) "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). However, Rule 26 provides for discovery only of nonprivileged matters. Fed.R.Civ.P. 26(b)(1).

In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the United States Supreme Court formally recognized the psychotherapist-patient privilege. The Court specifically held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure" *Jaffee,* 518 U.S. at 5, 116 S.Ct. 1923. The Court also recognized that this privilege may be waived by the patient. *Jaffee,* 518 U.S. at 15, n. 14, 116 S.Ct. 1923. Neither the United States Supreme Court nor the Ninth Circuit has yet addressed whether and when a plaintiff waives the privilege by claiming emotional distress damages.

Courts in this Circuit taking the narrow approach have found that where a plaintiff alleges "garden-variety" emotional distress, without relying on medical records or medical expert testimony for proof at trial, the patient-physician privilege is not waived. *See, e.g., Fitzgerald v. Cassil,* 216 F.R.D. 632, 639 (N.D.Cal.2003) (holding that an allegation of garden-variety emotional damages does not waive the psychotherapist-patient privilege); *see also Uzzell v. Teletech Holdings, Inc.,* 2007 WL 4358315, at *2 (W.D.Wash. Dec. 7, 2007); *Sims v. Lakeside School,* 2007 WL 5417731, at *1 (W.D.Wash. Mar. 15, 2007).

Courts taking the broad approach find that the psychotherapist-patient privilege is waived whenever the patient places his mental condition at issue. *Sanchez v. U.S. Airways Inc.,* 202 F.R.D. 131 (E.D.Pa.2001) (Plaintiffs alleging Title VII violation waived the psychotherapist-patient privilege by alleging emotional distress); *Doe v. City of Chula Vista,* 196 F.R.D. 562, 567 (S.D.Cal. 1999) (Plaintiff in employment discrimination case who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim and waives the privilege); *Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127, 130 (E.D.Pa. 1997) (Plaintiff in American with Disabilities Act case who alleged defendant did not accommodate her depression waived psychotherapist-patient privilege); *EEOC v. Danka Industries, Inc.,* 990 F.Supp. 1138 (E.D.Mo. 1997) (Plaintiff waived psychotherapist patient privilege by alleging emotional distress damages in sexual harassment case brought pursuant to Title VII).

A recent case weighed both approaches and decided that the broad approach was appropriate for the particular circumstances presented by that case because the plaintiff's claim for emotional distress damages were the crux of her claim and could have been caused by something other than the alleged

sexual harassment. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D.Cal.2009). However, that plaintiff claiming Title VII discrimination was also being treated for depression, so multiple causation was clearly an issue in that case. *California Psychiatric Transitions*, 258 F.R.D. at 400. By contrast, the instant case does not present any multiple causation issues or specific emotional damages outside of any incidental emotional distress.

■ This Court finds that the "narrow" approach referenced above is the appropriate manner to determine if Plaintiff waived Mr. Nichols' privilege. *See Fitzgerald*, 216 F.R.D. at 639. Applying that approach, in light of the garden-variety emotional distress damages claimed by Plaintiff's amended complaint and Plaintiff's intention to support those damages through evidence other than medical records or expert testimony, Plaintiff has not waived the privilege attaching to Mr. Nichols' communications with his physicians and/or psychotherapists. Furthermore, there is no affirmative reliance by Plaintiff on the privileged communications that would support Defendant's discovery request. Consequently, the Court declines to compel Plaintiff to produce any medical records at this time.

If, in the course of deposing Mr. Nichols, family members, and/or co-workers, Defendant discovers that there is a basis for concluding that there are more particularized mental health or physical health issues, or that there were other potential causes or a long history of a relevant mental or physical illness, then Defendant may reapply to the Court for an order compelling production of medical records with proof of that additional information.

**Identity of the Individuals Who Drafted and Approved the EEOC Compliance Manual, Section 12–IV,** *Religious Discrimination—Reasonable Accommodation,* **dated July 22, 2008 ("Compliance Manual")**

Defendant seeks the identities of EEOC officials who have "specific personal knowledge" about the section of the July 22, 2008, EEOC Compliance Manual that covers reasonable accommodation of religion. ECF No. 51 at 9. Specifically, Defendant seeks the identity of an individual designated to speak on behalf of the EEOC regarding drafting of the Compliance Manual section and a second individual designated to speak on behalf of the EEOC regarding approval of the publication. Defendant argues that Wal-Mart followed the guidelines set forth in the Compliance Manual and Defendant intends "to inquire with the author(s) and approving officer(s) of this document regarding how [Defendant's] actions allegedly violate the guidelines." ECF No. 24 at 9.

Plaintiffs oppose the discovery on the basis that Defendant seeks irrelevant and privileged information.

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure requires the court to "limit the frequency or extent of discovery otherwise allowed" when:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

■ Relevancy for discovery purposes is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, discovery may not reach privileged matters, such as information protected by the deliberative process privilege, which Plaintiff argues applies to Defendant's attempt to question EEOC representatives regarding their interpretations of the manual.

■ The purpose of the "deliberative process" privilege is to "encourage frank and

open discussions of ideas" in order to improve the governmental decision-making process. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir.1988). The relevant inquiry when examining applicability of the privilege is whether "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of State of Cal. v. U.S. Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir.1992) (citation omitted). The privilege protects pre-decisional, deliberative material. *Assembly of State of Cal.,* 968 F.2d at 920.

Defendants emphasize that the Compliance Manual may be used by the Court and by the litigants for guidance even though the Manual is not binding on the courts. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The potential relevance of the content of the Compliance Manual, however, does not render the interpretations of individual EEOC officials relevant. The Court finds that any relevance or benefit from the requested information and the depositions to which it may lead is outweighed by the burden it would impose on the EEOC. Fed.R.Civ.P. 26(b)(2)(C). Furthermore, any conclusions, interpretations, or recommendations of the individuals who drafted or approved the EEOC Compliance Manual would be subject to the deliberative process privilege.

The Court, therefore, denies the Defendant's motion with respect to the identities of EEOC officials who drafted or approved the Compliance Manual. *See Assembly of State of Cal.,* 968 F.2d at 920.

Accordingly, **IT IS ORDERED** that the Defendant's Motion to Compel, **ECF No. 23,** is **DENIED.**

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.